**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GAYLAN HARRIS; JERRY JAHN;
JAMES MCCONNELL, on behalf of
themselves and others similarly
situated,

        *Plaintiffs-Appellants,*

        v.

COUNTY OF ORANGE,

        *Defendant-Appellee.*

No. 11-55669

D.C. No.
8:09-cv-00098-
AG-MLG

OPINION

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
October 11, 2011—Pasadena, California

Filed June 8, 2012

Before: Harry Pregerson and Dorothy W. Nelson,
Circuit Judges, and Barbara M.G. Lynn, District Judge.*

Opinion by Judge Barbara M. G. Lynn

---

*The Honorable Barbara M.G. Lynn, United States District Judge for
the Northern District of Texas, sitting by designation.

## COUNSEL

G. Scott Emblidge, Rachel J. Sater, Michael P. Brown, Moscone Emblidge & Sater LLP, San Francisco, California, for the plaintiffs-appellants.

Arthur A. Hartinger, Jennifer L. Nock, Meyers, Nave, Riback, Silver & Wilson, Oakland, California, for the defendant-appellee.

**OPINION**

LYNN, District Judge:

Named plaintiffs, on behalf of thousands of retired County employees participating in County-sponsored health care plans (collectively, the "Retirees"), filed this lawsuit against the County of Orange (the "County"), challenging changes it made to the structure of two health benefits. The Retirees appeal the district court's order granting a motion for judgment on the pleadings filed by the County. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand. To decide this case, we must address four issues: (1) whether we take judicial notice of a declaration and five Memoranda of Understanding ("MOUs"); (2) whether the district court erred in holding that the Retirees' Subsidy claim was barred by claim preclusion; (3) whether the district court erred in holding that there was no explicit authority requiring the County to provide a benefit in perpetuity; and (4) whether the district court erred in holding that the Retirees failed to exhaust their administrative remedies.

## I.   Factual and Procedural Background

The Retirees allege that the County's restructuring of their health benefits violated the United States and California Constitutions, and was a breach of contract, and constituted discrimination against the Retirees on account of their age, in violation of California's Fair Employment and Housing Act, California Government Code § 12940 et seq. ("FEHA").

## A.   Retiree Health Benefits

From 1985 through 2007, the County subsidized health insurance premiums for its retired employees by pooling active and retired employees into one collective group of health plan participants (the "Retiree Premium Subsidy" or the "Subsidy"). Although the County's program provided

retirees and active employees the same benefits at the same costs, the pooling of the two groups had the effect of lowering retiree premiums below what their actual rates would otherwise have been, i.e., the program subsidized retired employees. From 1993 through 2007, retired employees also received a monthly grant to be applied toward the cost of their health insurance coverage, referred to as the Retiree Medical Grant (the "Grant"). The terms and conditions of the Grant were set forth in separate sections of the collective bargaining agreements, known as MOUs, governing the relationship between the County and its active and retired employees. For the small number of retirees not represented by unions, the terms and conditions were described in Personnel and Salary Resolutions. The monthly grant for retirees was calculated by multiplying the employees' years of service at the time of retirement by a fixed-dollar amount ("the Grant Multiplier"). The initial Grant Multiplier was $10, but it increased every year by up to 5% to reflect inflation.

## B.    The County Restructures the Retiree Medical Program

Beginning in 2004, the County engaged in negotiations with labor unions to restructure its retiree medical program,[1] which was underfunded and in danger of insolvency. On September 12, 2006, the County's Board of Supervisors formally approved an agreement with the Orange County Employees Association. The agreement provided, in pertinent part, that effective January 2008, (1) the County would separate retired and active employees into different health plans or pools to set premiums; (2) the maximum increase for the Grant Multiplier would be reduced from 5% to 3%; and (3) once a Retiree became eligible for Medicare, the Grant would be reduced by 50%. In order to obtain the unions' agreement to forego the pooling structure that created the Subsidy and to reduce the Grant benefits, the County agreed to pay active employees

---

[1]The retiree medical program refers to all retiree health benefits, including the Subsidy and Grant.

higher wages, but the Retirees received nothing. The Retirees allege that as a result of the County's decision to stop pooling active and retired employees and to reduce the Grant, their health care premiums increased significantly. The Retirees allege they cannot afford the increases and that they have had to abandon their County-sponsored health insurance plans, and obtain coverage that costs less but provides lesser benefits.

C.   The Retired Employees Association of Orange County, Inc. ("REAOC") Lawsuit

On November 5, 2007, REAOC, a California non-profit corporation representing more than 4,600 County retirees and their spouses, filed suit in the Central District of California on behalf of thousands of retired County employees, challenging only the County's decision to stop pooling active and retired employees, and seeking declaratory and injunctive relief. REAOC alleged the existence of an implied promise to continue the Subsidy. On December 14, 2007, the County moved to dismiss REAOC's suit, alleging, in part, that REAOC lacked standing to sue for damages on behalf of its members. The district court, in denying the County's Motion to Dismiss, observed that REAOC's Complaint did not and could not seek damages. On December 22, 2008, REAOC and the County argued cross-motions for summary judgment. On June 19, 2009, the district court granted the County's Motion for Summary Judgment, finding that the County was not contractually obligated to provide Retirees with pooling throughout their lifetimes, because there was no evidence of "any explicit legislative or statutory authority" requiring the County to do so, and because that obligation could not arise by implication from past practices and course of dealing. *Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 632 F. Supp. 2d 983, 987 (C.D. Cal. 2009). REAOC appealed that judgment to this Court. On June 29, 2010, after oral argument, this Court certified to the California Supreme Court the question of whether, as a matter of California law, a California county

and its employees can form an implied contract that confers on retired county employees vested rights to health benefits, and the appeal from the district court was stayed pending the California Supreme Court's determination of the certified question. *See Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 610 F.3d 1099 (9th Cir. 2010). On November 21, 2011, the California Supreme Court answered the certified question, holding that under California law, a vested right to health benefits for retired county employees can be implied, under certain circumstances, from a county ordinance or resolution. *See Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 266 P.3d 287, 301 (Cal. 2011).

D.   Retirees' Lawsuit

On January 22, 2009, while summary judgment motions were pending in the REAOC lawsuit, the Retirees filed a class action in the Central District of California, and it was assigned to the same district judge presiding over the REAOC lawsuit. The Retirees filed an amended complaint on February 3, 2009, alleging, on behalf of thousands of retirees (including REAOC members and non-members), that the County's restructuring of its retiree medical program constituted an impairment of contract and denial of due process, in violation of the United States and California Constitutions, and was a breach of contract, and constituted discrimination against the Retirees on account of their age, in violation of the FEHA. The Retirees sought damages and injunctive and declaratory relief. They alleged that the Subsidy was an implied term of the MOUs and that they had a contractual right to receive the Grant, as its terms were reflected in the MOUs in place on the dates they retired. The suits filed by the Retirees and REAOC overlapped, to the extent both sought declaratory and injunctive relief related to the County's elimination of the Subsidy, alleging the same theories of contract and constitutional law. One of the class representatives, James McConnell, had filed a timely administrative complaint with the California Depart-

ment of Fair Employment and Housing on December 30, 2008. In his administrative complaint, he stated that:

> For 23 years the county maintained one set of health care plans for active and retired employees, and charged premiums for coverage under those plans based on a combined pool of all active and retired employees. Beginning in 2008 the county removed retired employees from the plans and 'split the pool,' for the express purpose of eliminating 'older, less healthy' participants from the plans. The premiums for retired employees rose dramatically as a result, including my own premiums, which increased by hundreds of dollars per month.

On April 7, 2010, the County moved, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings. On March 29, 2011, the district court granted the motion, without giving the Retirees leave to amend. The district court found that the Retirees' Subsidy claims were barred by claim preclusion, because there was an identity of claims between those in the Retirees' lawsuit and the REAOC lawsuit, and because there was privity between the Retirees and REAOC. The district court determined that the Retirees had been adequately represented by REAOC, because the Retirees' and REAOC's interests were aligned and because REAOC understood itself to be acting in a representative capacity. The district court also found that the Retirees' Grant claims should be dismissed, because the Retirees had not pled that any "explicit legislative or statutory authority" required the County to provide the Grant in perpetuity. Finally, the district court found, for purposes of the FEHA claim, that the Retirees failed to exhaust administrative remedies because Mr. McConnell's administrative complaint did not state it was "on behalf of" other class members. The Retirees timely appealed.

## II.   Standard of Review

We review *de novo* a district court's grant of a Rule 12(c) motion for judgment on the pleadings. *United States ex rel.*

*Cafassov. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 (9th Cir. 2011). The Court inquires whether the complaint at issue contains "sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *Cafasso*, 637 F.3d at 1054 n.4 (finding *Iqbal* applies to Rule 12(c) motions because Rule 12(b)(6) and Rule 12(c) motions are functionally equivalent). The Court may find a claim plausible when a plaintiff pleads sufficient facts to allow the Court to draw a reasonable inference of misconduct, but the Court is not required "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). Similarly, we review *de novo* a district court's dismissal based on claim preclusion. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

## III.　Discussion

### A.　Request for Judicial Notice

The Retirees request that we take judicial notice of (1) a declaration filed by the County in the REAOC litigation, and (2) five of the MOUs that were attached as exhibits to that declaration. The County has not opposed the request for judicial notice.

Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. We may take judicial notice of undisputed matters of public record, *Lee v. City of Los Ange-*

*les*, 250 F.3d 668, 689 (9th Cir. 2001), including documents on file in federal or state courts. *See Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002). Moreover, documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents. *Lee*, 250 F.3d at 688.

Therefore, pursuant to Rule 201 and Ninth Circuit authorities, we take judicial notice of these documents that are on file in federal court in the REAOC litigation and because the Retirees make reference to the MOUs in their Complaint.

B. Retirees' Appeal of the District Court's Dismissal of the Subsidy Claims

The Retirees contend that the district court erred by holding that the REAOC litigation precluded them from pursuing their claims for damages related to the County's elimination of the Subsidy because, among other reasons, REAOC could not adequately represent the Retirees. We agree.

**[1]** Claim preclusion requires three things: (1) identity of claims; (2) a final judgment on the merits; and (3) the same parties, or privity between the parties. *Cell Therapeutics, Inc. v. Lash Grp. Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2010) (amended).

A court is to apply four criteria to decide whether there is an identity of claims: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011). The fourth criterion is the most important. *Id.* at 1151.

The Retirees challenge the County's decision to no longer pool active and retired employees for purposes of determining health premiums, thereby eliminating the Subsidy, and assert that the County's past practice of pooling created an implied contract to continue pooling. The Retirees acknowledge that the County's elimination of the Subsidy is also the subject of the REAOC litigation. We find that there is an identity of claims in the two cases with respect to the Subsidy.

The second factor for claim preclusion is also met, because there was a final summary judgment on the merits in the REAOC litigation. *Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 632 F. Supp. 2d 983 (C.D. Cal. 2009); *see also Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) (per curiam) (stating that "[t]he established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal") (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4433, at 308 (1981)) (internal quotation marks omitted).

**[2]** However, we find that REAOC and the Retirees are not in privity, so the third factor is not met. Although the Retirees were not named parties to the REAOC litigation, "in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who [wa]s a party to the suit." *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (internal quotation marks omitted). "A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and [the] representative are aligned; and (2) either the party understood [itself] to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Id.* at 900 (internal citation omitted). Relying on *Anderson v. Waddle*, 474 F. Supp. 2d 1116 (E.D. Mo. 2007), the Retirees argue that REAOC could not adequately represent them because, as an association, REAOC lacked the legal capacity to seek dam-

ages on their behalves, and thus, the interests of REAOC and the Retirees are not aligned. In *Anderson*, individual members of an association sought damages, when the association had previously brought suit for injunctive and declaratory relief for the same alleged violation. *Id.* at 1118-19. The defendant urged dismissal of the individual plaintiffs' claims based on claim preclusion. *Id.* The court held that preclusion did not apply because, under the doctrine of associational standing as set forth in *Warth v. Seldin*, 422 U.S. 490 (1975), an association may only seek injunctive or declaratory relief, and therefore, the association could not adequately represent its individual members in claiming damages. *Id.* at 1119.

**[3]** The Restatement (Second) of Judgments § 26(1)(c) is also relied on by the Retirees. Section 26(1)(c) states that claim preclusion "does not apply to extinguish [a] claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant" when:

> [t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief.

The Comment to the provision explains that the doctrine of claim preclusion:

> is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim[,] including any theories of recovery or

demands for relief that might have been available to him under applicable law.

Restatement (Second) of Judgments, § 26(1)(c) cmt. c.

**[4]** We find the reasoning of *Anderson* and Section 26(1)(c) persuasive. Therefore, we conclude that claim preclusion does not bar a second action for damages, where a damages remedy was unavailable in the first action. *See Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1563 (Fed. Cir. 1996) (finding that "where a plaintiff was precluded from recovering damages in the initial action by formal jurisdictional or statutory barriers, not by plaintiff's choice, a subsequent action for damages will not normally be barred by res judicata even where it arises from the same factual circumstances as the initial action") (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). The County cites to *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1730-31 (2011), *Feminist Women's Health Center v. Codispoti*, 63 F.3d 863, 868 (9th Cir. 1995), *McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986), and *Jackson v. Hayakawa*, 605 F.2d 1121, 1125 (9th Cir. 1979) to support its contention that claim preclusion does not turn on the requested relief. However, both suits in those cases involved, or were treated as involving, the same parties, and no formal barriers precluded pursuit of a specific remedy.[2]

**[5]** We find that the interests of REAOC and the Retirees are not aligned because associational standing rules prevent REAOC from pursuing damages. The County recognized the

---

[2]In *Jackson v. Hayakawa*, named plaintiffs in the first and second actions were different. However, the Court found the parties to be the same for purposes of claim preclusion because the first action was brought on behalf of a class and was treated by the court as a class action. Further, although named plaintiffs in the first action sought only declaratory and injunctive relief, no formal barriers prevented them from seeking the damages that the named plaintiff in the second action sought. 605 F.2d at 1125-26.

limits of REAOC's authority when it proactively moved to dismiss REAOC's claims, arguing that REAOC lacked standing to sue for damages. The district court denied the motion because no such claims were asserted by REAOC, but in doing so, the Court recognized the limits of REAOC's standing. Therefore, we find that the district court erred when it ruled that the Retirees' Subsidy claims for damages are barred by claim preclusion.[3]

**[6]** Although the parties dispute whether the district court ruled on the merits of the Subsidy claim, we decline to reach this issue. In the REAOC litigation, we certified the question of whether an implied contract to continue the pooling benefits was formed under state law. *Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 610 F.3d 1099, 1101 (9th Cir. 2010). On November 21, 2011, the California Supreme Court answered the certified question, holding that under California law, a vested right to health benefits for retired county employees can be implied, under certain circumstances, from a county ordinance or resolution. *See Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 266 P.3d 287, 301 (Cal. 2011). Consistent with this Court's decision reached in the REAOC litigation after the California Supreme Court's decision, we remand the Retirees' Subsidy claims so that the district court may reassess those claims in light of the California Supreme Court's opinion, and coordinate those claims with the REAOC litigation.

C. Retirees' Appeal of the District Court's Dismissal of the Grant Claims

The Retirees argue that the district court erred when it dismissed the Grant claim, finding that there was no explicit leg-

---

[3]At oral argument, counsel for the Retirees stated that the Retirees are only pursuing their damages claims. Therefore, we decline to decide here whether claims by the Retirees for declaratory and injunctive relief are barred by the REAOC litigation.

islative or statutory authority requiring the County to provide the Grant in perpetuity. We do not disagree with the district court's conclusion to that effect, but find that the district court should have granted the Retirees leave to amend.

**[7]** Under California law, in the public employment context, a contract with employees must be created by a resolution or ordinance formally enacted by a majority of the Board of Supervisors. Cal. Gov't Code § 25300; *Cnty. of Sonoma v. Superior Court*, 93 Cal. Rptr. 3d 39, 56 (Cal. Ct. App. 2009); *see also Glendale City Emps. Ass'n v. City of Glendale*, 540 P.2d 609, 613-17 (Cal. 1975) (stating that once an MOU is approved by a governmental body, it becomes a binding agreement). In order to state a claim for a contractual right to the Grant, the Retirees must plead specific resolutions or ordinances establishing that right. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, No. 09-04432, 2010 WL 1957463, at *3-4, 5 (N.D. Cal. May 14, 2010) ("*Sonoma I*"); *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, No. 09-04432, 2010 U.S. Dist. LEXIS 143345, at *9, 27 (N.D. Cal. Nov. 23, 2010) ("*Sonoma II*") (dismissing case with prejudice, where none of the Board resolutions or Board-certified MOUs "explicitly provide[d] that Sonoma agreed to provide health insurance benefits to retirees in perpetuity, [and so] a contract to do so has not been formed").

**[8]** Although the Retirees did not plead in their Complaint the specific resolutions or ordinances providing a continued right to the Grant, nor refer to any such resolution or ordinance in their opposition to the Rule 12(c) motion, they have requested judicial notice of a limited number of MOUs, two of which are accompanied by a Board of Supervisors Resolution adopting those MOUs "as detailed in [the] submitted Attachment." There are no terms or provisions in the MOUs, or in the Board resolutions adopting them, that guarantee the Grant will continue as that Grant existed in the MOUs in place on the dates of retirements. Further, the referenced MOUs, including those adopted by the Board of Supervisors,

contain durational language.[4] *Sonoma II*, 2010 U.S. Dist. LEXIS 143345, at *15-21 (finding that each proffered MOU had durational language and that there was no explicit language in any of them providing that the benefits would survive the term of any MOU). The Retirees argue that they do not have to identify specific terms in the MOUs for purposes of a Rule 12(c) motion, and that the "durational" terms are merely generic statements that should not be considered for purposes of reviewing a Rule 12(c) motion. Retirees' arguments are without merit. While the Court must accept as true the facts pled by the nonmovant Retirees, the Retirees have failed to plead facts that suggest that the County promised, in the MOUs or otherwise, to maintain the Grant as it existed on the Retirees' respective dates of retirement. The Retirees also argue that the durational clause in the MOUs is not an indication of when the terms of the MOUs expire. That may be so, but the durational clause surely cannot be the source of a claim that the benefits survive indefinitely.

[9] The question remains whether the Retirees should be granted leave to amend their Complaint to set forth facts establishing their claimed right to receive the Grant in perpetuity. Dismissal without leave to amend is appropriate only when the Court is satisfied that an amendment could not cure the deficiency. *See Eminence Capital*, 316 F.3d at 1052. Because there are MOUs adopted by the Board of Supervisors in resolutions, the terms of which are not all before the Court, we find that the Retirees should be given an opportunity to amend their Complaint to set out specifically the terms of those MOUs on which their claim is predicated.

---

[4]For example, one MOU states: "This Memorandum of Understanding sets forth the terms of agreement reached . . . for the period beginning July 23, 1993 through June 23, 1994."

D.   Retirees' Appeal of the District Court's Dismissal of the
     FEHA Claim

The district court dismissed the Retirees' FEHA claim for
failure to exhaust administrative remedies. The Retirees argue
that the single filing rule permits them to "piggyback" on the
timely filed administrative complaint of James McConnell,
one of the named plaintiffs. We agree.

A plaintiff asserting claims of discrimination pursuant to
the FEHA must exhaust the statute's administrative remedies
before filing a lawsuit. *Rojo v. Kliger*, 801 P.2d 373, 384 (Cal.
1990) ("exhaustion of the FEHA administrative remedy is a
precondition to bringing a civil suit on a statutory cause of
action") (emphasis omitted). This requirement applies to class
actions as well. Cal. Gov't Code § 12961; *Holloway v. Best
Buy Co.*, No. C-05-5056 PJH, 2009 U.S. Dist. LEXIS 50994,
at *15, 26-27 (N.D. Cal. May 28, 2009). For purposes of the
FEHA, administrative remedies are exhausted by the filing of
an administrative complaint with the Department of Fair
Employment and Housing ("DFEH") and obtaining from the
DFEH a notice of right to sue. *Okoli v. Lockheed Technical
Operations Co.*, 43 Cal. Rptr. 2d 57, 61 (Cal. Ct. App. 1995).

Here, James McConnell timely filed a complaint of dis-
crimination with DFEH, stating:

> For 23 years the county maintained one set of health
> care plans for active and retired employees, and
> charged premiums for coverage under those plans
> based on a combined pool of all active and retired
> employees. Beginning in 2008 the county removed
> retired employees from the plans and 'split the pool,'
> for the express purpose of eliminating 'older, less
> healthy' participants from the plans. The premiums
> for retired employees rose dramatically as a result,
> including my own premiums, which increased by
> hundreds of dollars per month.

Mr. McConnell received a right to sue letter from the agency on the same day, and the County was served with the administrative complaint and the letter on or about January 21, 2009.

**[10]** In the absence of any state authority on the issue of whether the single filing rule applies to FEHA claims, we look to Title VII and ADEA cases in other federal circuits. *See State Dep't of Health Servs. v. Superior Court*, 79 P.3d 556, 562 (Cal. 2003) (stating that "California courts often look to Title VII in interpreting the FEHA"); *E.E.O.C. v. NCL America Inc.*, 504 F. Supp. 2d 1008, 1012 (D. Hawaii 2007) (citing authority that Hawaii courts find federal precedent under Title VII and other similar laws persuasive in interpreting Hawaii's age discrimination statute). In Title VII and ADEA cases, federal courts have found that so long as one plaintiff timely files an administrative complaint, a class of similarly-situated plaintiffs may "piggyback" on that complaint, thereby satisfying the exhaustion requirement. *See Bean v. Crocker Nat'l Bank*, 600 F.2d 754, 759 (9th Cir. 1979); *E.E.O.C. v. Catholic Healthcare W.*, 530 F. Supp. 2d 1096, 1107 (C.D. Cal. 2008). This single filing rule is based on the observation that it would be duplicative and wasteful for complainants with similar grievances to have to file identical notices of intent to sue with a governmental agency. *Bean*, 600 F.2d at 760 n.15.

The County argues against the single filing rule by relying on *Inda v. United Air Lines, Inc.*, 565 F.2d 554 (9th Cir. 1977). The County maintains that an administrative complaint must say "class action" or "on behalf of others similarly situated" before it can qualify for the single filing rule. In *Inda*, two women sued United Airlines, alleging unlawful employment practices based on sex. Both filed complaints with the EEOC, but not within 90 days of the alleged unlawful employment practice, as required by statute. They argued that their claims should not be barred for failing to exhaust administrative remedies, because two other women, who each had separate lawsuits pending in another federal court, had

already filed complaints with the EEOC. We held that the fact that someone else had filed an administrative complaint based on the same violation did not excuse plaintiffs from filing their own administrative complaints with the EEOC. *Inda*, 565 F.2d at 558-59. However, *Inda* should be limited to its specific facts—"where a plaintiff sought to rely on an administrative charge [i.e., complaint] of an individual employee in a separate action." *E.E.O.C. v. Cal. Psychiatric Transitions, Inc.*, 644 F. Supp. 2d 1249, 1265 n.11 (E.D. Cal. 2009); *Dukes v. Wal-Mart Stores Inc.*, 2002 WL 32769185, at *3-6 (N.D. Cal. Sept. 9, 2002). Here, the other named plaintiffs are part of the same action asserted by McConnell, and are not seeking to rely on the administrative complaint of another retiree in a separate individual lawsuit. Further, *Inda* does not expressly say that the words "on behalf of" or "class action," as opposed to words expressing the same concept, must be stated in the administrative complaint for the single filing rule to apply.

**[11]** Further, California state law in other contexts suggests that not all named plaintiffs must exhaust administrative remedies. In *Friends of Mammoth v. Board of Supervisors of Mono Cnty.*, 502 P.2d 1049, 1062-63 (Cal. 1972), *disapproved on other grounds by Kowis v. Howard*, 838 P.2d 250 (Cal. 1992), which involved a putative class action challenging a local commission's decision to grant a use permit to a developer, the named plaintiffs had not exhausted their administrative remedies, but some members of the putative class had done so. The California Supreme Court held that the purposes underlying the exhaustion doctrine had been satisfied, and that the action could move forward. The court determined that requiring named plaintiffs to exhaust their remedies, when others in the class had already done so, would serve no useful purpose. *See also Leff v. City of Monterey Park*, 267 Cal. Rptr. 343 (Cal. Ct. App. 1990) (finding exhaustion where only two of the three plaintiffs participated in the administrative review process, because the two plaintiffs who had exhausted their administrative remedies shared

a common interest with the one who had not). Therefore, we find that Mr. McConnell's timely filed administrative complaint is sufficient to establish exhaustion of administrative remedies for all class members.[5]

## IV. Conclusion

For the reasons stated above, we reverse and remand for further proceedings consistent with this opinion, and with the answer provided by the California Supreme Court to the certified question in the REAOC litigation. A summary of our decision follows. First, we take judicial notice of the documents. Second, we REVERSE the district court's dismissal of the Retirees' Subsidy claims and REMAND so that the district court may reassess those claims in light of the California Supreme Court's opinion, and coordinate those claims with the REAOC litigation. Third, we REVERSE the district court's dismissal of the Retirees' Grant claims because we find that the Retirees should be given an opportunity to amend their Complaint to set out specifically the terms of those MOUs on which their claim is predicated. Finally, we REVERSE the district court's dismissal of the Retirees' FEHA claim because we find that Mr. McConnell's timely filed administrative complaint is sufficient to establish exhaustion of the administrative remedies for all class members.

Should there be another appeal, this panel will retain jurisdiction and will give scheduling priority to the appeal.

**REVERSED AND REMANDED.**

---

[5]The County argues, as it did below, that the FEHA does not apply to retired employees. By finding administrative remedies had not been exhausted, the district court did not have an opportunity to address this argument. Therefore, we decline to reach this issue."