

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-14-1101-KiBrD |
| ) | |
| LAUREL BELKIN GREENSTEIN, ) | Bk. No.   1:12-15099-AA |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| LAUREL BELKIN GREENSTEIN, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **AMENDED MEMORANDUM**[1] |
| ) | |
| WELLS FARGO BANK, N.A., ) | |
| SUCCESSOR BY MERGER WITH ) | |
| WELLS FARGO BANK SOUTHWEST, ) | |
| N.A., f/k/a WACHOVIA MORTGAGE,) | |
| FSB, f/k/a WORLD SAVINGS BANK,) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on July 23, 2015,
at Pasadena, California

Filed - January 26, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Alan M. Ahart, Bankruptcy Judge, Presiding

_____

Appearances:    Appellant Laurel Belkin Greenstein argued pro se;
Robert A. Bailey of Anglin Flewelling Rasmussen
Campbell & Trytten LLP argued for appellee Wells
Fargo Bank, N.A.

_____

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Before:   KIRSCHER, BRANDT[2] and DUNN, Bankruptcy Judges.

Memorandum by Judge Kirscher
Concurrence by Judge Dunn

Chapter 7[3] debtor Laurel Greenstein appeals an order denying her motion to set aside the sale of her home, a sale she contends is void because it violated the automatic stay.  The bankruptcy court denied the motion on the basis of claim preclusion, but failed to articulate any findings to support the doctrine's application.  Thus, we VACATE and REMAND for further proceedings.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    The Lipkis bankruptcy case and the in rem order**

In 2007, Debtor obtained a $510,000 loan from World Savings Bank, predecessor to appellee Wells Fargo Bank, N.A., secured by a deed of trust recorded against her residence in Woodland Hills, California ("Property").  Debtor later defaulted and a notice of default was recorded in July 2011.  A notice of sale was recorded on October 26, 2011, with a trustee's sale of the Property scheduled for November 15, 2011.  Meanwhile, Debtor sued Wells Fargo and others in state court with respect to the pending foreclosure in October 2011.  On November 22, 2011, the state court issued a temporary restraining order enjoining Wells Fargo from selling the Property at foreclosure pending a hearing on the

---

[2] Hon. Philip H. Brandt, Bankruptcy Judge for the Western District of Washington, sitting by designation.

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

-2-

issuance of a preliminary injunction scheduled for January 9, 2012.

On November 10, 2011, five days before the scheduled sale, a grant deed appeared to be recorded transferring title to the Property from Debtor to Roger Lipkis ("Lipkis Deed"). On November 18, 2011, Lipkis filed a chapter 13 bankruptcy case.[4] Lipkis did not claim an interest in the Property.[5] His case was assigned to Judge Tighe.

In February 2012, Debtor sent an email to counsel for Wells Fargo in the state court action informing him that the Lipkis Deed was a fake and appeared to be a "cut and paste" job. She denied knowing Lipkis or executing the Lipkis Deed. In actuality, the recording number on the Lipkis Deed — 20111253614 — is identified with a tax lien document recorded on September 15, 2011 (two months before the Lipkis Deed), against an unrelated third party.

It later became clear that the Property had been transferred to Lipkis without his knowledge or consent or the consent of Wells Fargo prior to him filing bankruptcy. On March 7, 2012, counsel for Lipkis and Wells Fargo filed a stipulation to terminate the automatic stay with respect to the Property under § 362(d)(1). The parties further agreed to in rem relief under § 362(d)(4).

On March 19, 2012, the bankruptcy court entered an order in the Lipkis case granting the stipulated motion for relief from

---

[4] Wells Fargo contends that Lipkis's bankruptcy filing on November 18, 2011, stopped the pending trustee's sale.

[5] Notably, the Lipkis Deed indicates that Lipkis is an "unmarried man," but his bankruptcy documents filed just eight days later indicate that he is "married."

-3-

stay under § 362(d)(1) and (d)(4) ("In Rem Order").  The In Rem

Order[6] provides, in relevant part:

    3.    The motion is granted under:

              ☒ 11 U.S.C. § 362(d)(1)
              ☒ 11 U.S.C. § 362(d)(4) (See attached
              continuation page)

    4.    As to Movant, its successors, transferees and
          assigns, the stay of 11 U.S.C. § 362(a) is:

          a.    ☒ Terminated as to Debtor and Debtor's
                bankruptcy estate.

    5.    ☒    Movant may enforce its remedies to foreclose
               upon and obtain possession of the Property in
               accordance with applicable nonbankruptcy law.

    9.    ☒    The filing of the petition was part of a
               scheme to delay, hinder and defraud creditors
               that involved either:

               ☒    transfer of all or part ownership of, or
                    other interest in, the Property without
                    the consent of the secured creditor or
                    court approval.  (see attached
                    continuation page).

    If recorded in compliance with applicable state law
governing notices of interests or liens in the Property,
this Order is binding and effective under § 362(d)(4)(A)
and (B) in any other bankruptcy case purporting to affect
the Property filed not later than 2 years after the date
of the entry of this Order, except that a debtor in a
subsequent bankruptcy case may move for relief from this
Order based upon changed circumstances or for good cause
shown, after notice and a hearing.  Any federal, state or
local government unit that accepts notices of interests or
liens in real property shall accept any certified copy of
this Order for indexing and recording.

The "attached continuation page" in the In Rem Order provides, in

---

    [6] Prior to December 22, 2010, the relevant language in
§ 362(d)(4) read "hinder, delay **and** defraud creditors" (emphasis
added).  The Bankruptcy Technical Corrections Act of 2010, Pub. L.
No. 111-327, 124 Stat. 3557 (2010) (effective December 22, 2010)
replaced this language with "hinder, delay **or** defraud" (emphasis
added).  The mandatory form used for the In Rem Order contained
the outdated "and" language.

-4-

relevant part:

 a. That [Lipkis] asserts no interest in the [Property].

 b. That an interest in the Property was impermissibly transferred to [Lipkis] without the knowledge of [Lipkis]. Without [Lipkis's] consent, his Chapter 13 bankruptcy case proceeding is being used for an improper purpose as part of a scheme to delay, hinder and defraud creditors that involved a transfer of all or part ownership of, or interest in the [Property] without the consent of this Movant or court approval.

Nothing in the record indicates Debtor was given notice of the stipulation or any motion to approve it or of the entry of the order. A certified copy of the In Rem Order was recorded on March 28, 2012. A new notice of sale for the Property was recorded on May 14, 2012, with a trustee's sale scheduled for June 4, 2012.

**B.   Debtor's bankruptcy case and her multiple attempts to vacate the In Rem Order and/or to seek damages from the alleged stay violation**

 **1.   The Lipkis motions and Debtor's adversary proceedings**

Debtor filed a chapter 7 bankruptcy case on May 31, 2012, five days before the rescheduled foreclosure sale of the Property. Her case was assigned to Judge Ahart. Debtor identified an interest in the Property valued at $975,000, subject to Wells Fargo's secured claim of $575,000. Debtor claimed a homestead exemption of $150,000.

A trustee's sale of the Property proceeded on July 11, 2012.[7] Wells Fargo was the successful bidder with a credit bid of $563,411.26. A trustee's deed was recorded on November 13, 2012.

_____

[7] The sale set for June 4 was apparently delayed to July 11 due to Debtor's listing of the Property in her bankruptcy schedules and the chapter 7 trustee's ("Trustee") attempt to list and sell the Property on behalf of the estate.

-5-

Debtor, pro se, proceeded thereafter to file three post-sale motions in the Lipkis bankruptcy case attempting to obtain relief from the In Rem Order. On August 7, 2012, Debtor filed a "Motion for Hearing to Reverse Order Granting Motion for Relief Under 11 U.S.C. § 362 (Real Property)." Debtor alleged that the facts presented in the stipulation by counsel for Lipkis and Wells Fargo were false, and that Wells Fargo had used the In Rem Order to bypass the automatic stay in her bankruptcy case and sell the Property. Debtor alleged that the Lipkis Deed was a fake and that she never transferred the Property to Lipkis, whom she did not know. Debtor further alleged that while Trustee was not challenging the July 11 sale, she had previously stated in writing to Wells Fargo and Debtor that the In Rem Order was improper. Debtor presented no evidence to support Trustee's alleged written statement.[8]

Before the August 7 motion could be heard, Debtor filed an "Amended Motion for Hearing to Reverse Order Granting Motion for Relief Under 11 U.S.C. § 362 (Real Property)" on August 14, 2012. This motion was identical to the first motion, except for the inclusion of a declaration from Debtor. Debtor said she knew who did the "cut and paste" job to create the fake Lipkis Deed and get it to Wells Fargo, but she could not prove it. In any event, she denied any involvement. Debtor stated that the notary who

---

[8] Debtor later included a copy of an email from Trustee to Wells Fargo's counsel dated July 11, 2012 — the day of the sale — with her motion to set aside the sale filed in December 2013. In that email, Trustee opined "[t]here is no in rem relief contained in the [In Rem Order]." Trustee further opined that the sale had violated the automatic stay and had to be reversed immediately. Trustee indicated that significant equity existed in the Property (about $133,000 based on a $749,000 sale price).

allegedly signed the Lipkis Deed was willing to testify that she never notarized the document and that she had no record of it in her notary book.

Two days later on August 16, 2012, Debtor filed a third motion — "Motion to set hearing Re contempt." In this motion, Debtor requested that the bankruptcy court find counsel for Lipkis and Wells Fargo in contempt for their alleged willful misrepresentations made to the court in their stipulation for stay relief in the Lipkis bankruptcy case.

Four days after filing the last of her three motions in the Lipkis bankruptcy case, Debtor in her own bankruptcy case filed an adversary proceeding against Wells Fargo, its counsel and counsel for Lipkis, Adv. No. 12-1300 ("First Adversary Proceeding"). Although her complaint failed to set forth any precise claim for relief, Debtor attacked the validity of the In Rem Order and contended that the July 11 sale was void because it violated the automatic stay in effect in her case. Debtor requested that title to the Property be restored to her and that she be awarded monetary damages for the alleged stay violation.

Wells Fargo moved to dismiss the First Adversary Proceeding on September 24, 2012, asserting several theories as to why the complaint should be dismissed, including that Debtor lacked standing to bring the action. Wells Fargo argued that the claims asserted by Debtor arose out of an alleged prepetition action and were property of the bankruptcy estate. Because Debtor had not scheduled these alleged claims and/or because Trustee had not yet abandoned them, Wells Fargo argued that Debtor lacked standing to pursue them on her own behalf. A hearing on Wells Fargo's motion

-7-

to dismiss was scheduled for October 23, 2012. Meanwhile, on October 4, 2012, Trustee filed her notice of intent to abandon the Property as burdensome and of inconsequential value to the estate. No objections were filed.

The hearing on Wells Fargo's motion to dismiss the First Adversary Proceeding went forward on October 23, 2012. We do not have a transcript, but because Debtor filed another adversary proceeding the next day, we assume the bankruptcy court announced its intent to dismiss the First Adversary Proceeding at that hearing.

The court entered an order on November 1, 2012, granting Wells Fargo's motion to dismiss without leave to amend on the basis that "Debtor has no standing." The First Adversary Proceeding was closed shortly thereafter. Debtor did not appeal the dismissal of the First Adversary Proceeding.

Before the First Adversary Proceeding was dismissed, Debtor filed a second adversary proceeding against the same defendants on October 24, 2012, Adv. No. 12-1379 ("Second Adversary Proceeding"). The complaint in the Second Adversary Proceeding was virtually identical to the first one, except Debtor asserted that she now had standing to pursue the action against defendants because Trustee had abandoned the Property. All three defendants filed separate motions to dismiss under Civil Rule 12(b)(6). Wells Fargo filed its motion to dismiss on November 26, 2012. It contended that Debtor still lacked standing to pursue the action despite Trustee's abandonment of the Property, because her purported claims arose out of an alleged prepetition action respecting the loan for the Property and those claims had not been

-8-

abandoned by Trustee.

On December 4, 2012, Judge Tighe ruled on Debtor's post-sale motions filed in Lipkis's bankruptcy case, denying all three. Judge Tighe noted that Debtor had filed the Second Adversary Proceeding on October 24, 2012, in her own case which stated the same allegations of fact that were the basis for the three motions. Judge Tighe opined that the Second Adversary Proceeding, rather than the post-sale motions, was the proper action for Debtor to address her complaints. Debtor did not appeal the orders.

On December 19, 2012, the bankruptcy court held a hearing on two of the defendants' motions to dismiss the Second Adversary Proceeding. Wells Fargo's motion was not scheduled to be heard until January 2, 2013, but it appeared at the December 19 hearing. As for the other two defendants, the bankruptcy court entered two orders dismissing the Second Adversary Proceeding without leave to amend on December 26 and 27, 2012. Before Wells Fargo's motion was heard, Debtor voluntarily dismissed the Second Adversary Proceeding without prejudice on December 28, 2012. The Second Adversary Proceeding was closed July 24, 2013.[9]

_____

[9] A hearing on Wells Fargo's motion to dismiss the Second Adversary Proceeding went forward on January 2, 2013, but Debtor failed to appear. Judge Ahart announced at that hearing that he would grant Wells Fargo's motion and dismiss the Second Adversary Proceeding with prejudice, not knowing that Debtor had already dismissed it without prejudice several days prior. For reasons unknown, and without ever conducting a hearing, Judge Ahart then entered an order granting Wells Fargo's motion to dismiss and dismissing the Second Adversary Proceeding with prejudice on February 7, 2014, even though the proceeding had already been dismissed and closed on July 24, 2013. The order did not set forth the reasons for the dismissal. Debtor tried to appeal the
(continued...)

-9-

**2.    Debtor's motion to set aside the sale of the Property**

Debtor, pro se, filed the instant motion in her bankruptcy case against Wells Fargo (only) on December 27, 2013. By this time, she had been evicted from the Property. Essentially, Debtor sought damages for Wells Fargo's alleged willful violation of the automatic stay. As with her prior motions and adversary complaints, Debtor contended that because Wells Fargo had failed to seek relief from stay in her bankruptcy case, Wells Fargo violated the stay when it foreclosed on the Property on July 11, 2012. Debtor made no mention of the In Rem Order.

Wells Fargo maintained that it had not violated the automatic stay because the In Rem Order entered and recorded in March 2012 authorized the trustee's sale on July 11, 2012, despite Debtor's

_____

[9](...continued)
February 7 dismissal order on August 11, 2014, and at the same time filed a motion to reconsider in the bankruptcy court. We dismissed the appeal as untimely on September 29, 2014. Debtor's reconsideration motion went forward.

On July 8, 2015, Debtor informed the Panel of recent developments respecting her motion to reconsider the dismissal order entered on February 7, 2014. On June 25, 2015, Judge Barash (to whom the adversary proceeding had been assigned) entered an order allowing supplemental briefing on the matter, realizing the court's potential mistake of dismissing the Second Adversary Proceeding with prejudice when Debtor had already dismissed it without prejudice. The bankruptcy court scheduled a hearing for August 19, 2015. On September 1, 2015, the bankruptcy court granted Debtor's motion and vacated the February 7, 2014 order dismissing the Second Adversary Proceeding. Debtor subsequently filed a third adversary proceeding, 1:15-ap-01220-MB. On December 15, 2015, the bankruptcy court dismissed the third adversary proceeding with leave to amend prior to February 5, 2016. To the extent the parties have requested that we take judicial notice of these recent developments, we **GRANT** that request. Otherwise, we are able to take judicial notice of the existence, filing and content of documents filed in Debtor's underlying bankruptcy case and her related adversary proceedings. O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

-10-

bankruptcy filing on May 31, 2012. Therefore, because the sale did not violate the automatic stay, Wells Fargo argued that no basis existed for setting it aside.

In her reply, Debtor contended that the In Rem Order did not apply in her case because: (1) the Lipkis court had no authority or jurisdiction to make any order relating to the Property; (2) the Property was never part of the Lipkis bankruptcy nor did Lipkis ever claim any interest in it; and (3) Wells Fargo knew months before the sale the Lipkis Deed was a fake and was never recorded. Debtor further contended that the In Rem Order provided no findings of an intent to hinder, delay or defraud creditors; there was only a stipulation to that by parties she alleged had no authority to make the stipulation. Debtor contended she had no opportunity to address the allegations raised in support of the In Rem Order.

Prior to the hearing on February 12, 2014, the bankruptcy court issued a tentative ruling sua sponte denying Debtor's motion on the basis of claim preclusion. The court stated that because it had "previously determined that debtor is unable to void the sale, the debtor cannot do so now via the motion."

At the hearing, Debtor was represented by attorney Lenore Albert ("Albert"). Albert sought clarification from the bankruptcy court as to which order or judgment had already determined the issues raised in Debtor's motion. The court never directly answered Albert's question, but when it noted that Wells Fargo had filed a motion to dismiss the Second Adversary Proceeding, Albert responded that the proceeding was dismissed only as to the other two defendants, not as to Wells Fargo; Debtor

-11-

dismissed that proceeding without prejudice before Wells Fargo's motion was decided. Nonetheless, Albert argued that even if the Second Adversary Proceeding had been dismissed as to Wells Fargo under Civil Rule 12(b)(6), such dispositions are not final judgments on the merits.

Counsel for Wells Fargo conceded that Wells Fargo had not been dismissed from the Second Adversary Proceeding before Debtor dismissed it without prejudice, but argued that the issue of the validity of the In Rem Order was decided in that proceeding as to the other defendants when they were dismissed. The bankruptcy court agreed and set forth its oral ruling:

> THE COURT: Well, you know, I'm going to – first of all, I agree with opposing counsel. I've already ruled on the merits – how do I put this – it's really – you say res judicata. I haven't used the word res judicata. I've ruled on the particular claims here on the merits. Okay. So I wouldn't call that – you want to call it collateral estoppel, claim preclusion, whatever, it's there. It's been done. She's had her bites at the apple. Okay. So this – that's why I said what I said in the tentative. So I believe she is barred from bringing this motion at this point.
> . . . .
>
> So I'm going to stick to my tentative and I'm going to deny the motion and ask opposing counsel to prepare the order.

Hr'g Tr. (Feb. 12, 2014) at 8:2-14, 8:19-21. The order denying Debtor's motion to set aside the sale of the Property entered on March 5, 2014, states only that the motion was "denied." This timely appeal followed.[10]

_____

[10] On July 9, 2015, Debtor filed a motion for sanctions. Her motion is essentially an unauthorized third brief for her appeal. Instead of the $150,000 she requested in her Second Adversary Proceeding, Debtor now seeks compensatory damages of "not less
(continued...)

-12-

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err in denying Debtor's motion to set aside the sale of the Property on the basis of claim preclusion?

## IV. STANDARDS OF REVIEW

We review rulings regarding the availability of res judicata doctrines, including claim preclusion, de novo as mixed questions of law and fact in which legal questions predominate. George v. City of Morro Bay (In re George), 318 B.R. 729, 732-33 (9th Cir. BAP 2004) (citing Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir. 1988), and Alary Corp. v. Sims (In re Associated Vintage Grp., Inc.), 283 B.R. 549, 554 (9th Cir. BAP 2002)). Once we determine that the doctrines are available to be applied, the actual decision to apply them is left to the trial court's discretion. In re George, 318 B.R. at 732-33 (citing Robi, 838 F.2d at 321).

The Panel must apply a two-part test to determine whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we consider de novo whether the bankruptcy court applied the correct

---

[10](...continued)
than $5,000,000" and "substantial punitive damages." The Panel cannot grant Debtor such relief in the context of this appeal, even if we reversed. Any proof of damages would have to be presented in the first instance to the bankruptcy court. Accordingly, we **DENY** the sanctions motion.

-13-

legal standard.  Id.  A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible, or without support in the record.  See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

**A.   Governing law**

**1.   Section 362**

The filing of a bankruptcy petition creates an automatic stay.  See generally § 362(a).  Unless an exception enumerated in § 362(b)(1)-(28) applies, the automatic stay prohibits, among other things, any act to enforce a lien against property of the debtor or of the bankruptcy estate.  § 362(a)(4), (5).  Actions taken by creditors in violation of the automatic stay are void. Griffin v. Wardrobe (In re Wardrobe), 559 F.3d 932, 934 (9th Cir. 2009).  In cases of a willful violation, the injured individual can recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages. § 362(k)(1); Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1215 (9th Cir. 2002).

Section 362(d)(4)[11] permits the bankruptcy court to grant "in

_____

[11] The text of § 362(d)(4) in effect at the time the In Rem Order was entered stated:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay – . . .

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim
(continued...)

-14-

rem" relief from the automatic stay to a creditor whose legitimate foreclosure efforts are being thwarted through one or more transfers of interest or multiple bankruptcy filings. "An order entered under § 362(d)(4) has serious implications. By seeking relief under § 362(d)(4), the creditor requests specific prospective protection against not only the debtor, but also every non-debtor, co-owner, and subsequent owner of the property." First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 871 (9th Cir. BAP 2012). See also § 362(b)(20).[12]

---

[11](...continued)
    is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either –
        (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
        (B) multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

[12] Section 362(b)(20) provides that the filing of a petition does not operate as a stay "under subsection (a), of any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order, except that the debtor, in a subsequent case under this title, may move for
(continued...)

-15-

Thus, not only does the § 362(d)(4) order grant stay relief to the moving party in the immediate bankruptcy case, if properly recorded, it also gives the moving party stay relief in subsequent bankruptcy cases. See Alakozai v. Citizens Equity First Credit Union (In re Alakozai), 499 B.R. 698, 703 (9th Cir. BAP 2013).

**2. Claim preclusion**

Claim preclusion, sometimes referred to as res judicata, prohibits relitigation of "any claims that were raised or could have been raised" in a prior action between the same parties or their privies. Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001). The doctrine "serves to promote judicial efficiency by preventing multiple lawsuits and to enable the parties to rely on the finality of adjudications." Dodd v. Hood River Cty., 136 F.3d 1219, 1224-25 (9th Cir. 1998). Claim preclusion bars a plaintiff from relitigating claims adjudicated in a prior judgment, even if the prior decision was wrongly decided. See, e.g., Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.").

Claim preclusion requires three elements: (1) an identity of claims; (2) a final judgment on the merits; and (3) the same parties or privity between the parties. Owens, 244 F.3d at 713. The Ninth Circuit has mandated a four factor test for determining

[12](...continued)
relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing."

-16-

whether there is an identity of claims: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." Harris v. Cty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012). The common nucleus criterion is the most important. Id.

**B.    The bankruptcy court abused its discretion when it applied claim preclusion to Debtor's motion to set aside the sale of the Property.**

Debtor first contends that it was reversible error for the bankruptcy court to apply claim preclusion sua sponte to the motion to set aside the sale. We disagree.

The court may dismiss an action sua sponte where a defense of claim preclusion is not raised by a defendant. United States v. Sioux Nation of Indians, 448 U.S. 371, 432 (1980). As the Supreme Court explained, the policy underlying this doctrine is "not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but [is] also based on the avoidance of unnecessary judicial waste." Id.; see also Clements v. Airport Auth. of Washoe Cty., 69 F.3d 321, 329 (9th Cir. 1995). A district court's sua sponte recognition of claim preclusion is "entirely proper" when the parties are permitted to address the question before the court. See McClain v. Apodaca, 793 F.2d 1031, 1033 (9th Cir. 1986). Although Wells Fargo did not specifically raise claim preclusion, the bankruptcy court was free to do so. Further, the court put Debtor on notice of the question in its

-17-

tentative ruling, and she had an opportunity to address it at the hearing before a final decision was rendered.

We are concerned, however, with Debtor's argument that the bankruptcy court failed to articulate any findings as to why claim preclusion applied. The court seemed to indicate at the hearing that it had already decided the merits of Debtor's claims in the Second Adversary Proceeding. But, without any findings, we cannot know for sure. We must consider the bankruptcy court's application of claim preclusion and determine whether an abuse of discretion occurred in that application.

**1. Identity of claims**

Both the First Adversary Proceeding and the instant motion are based on the same set of facts under the transactional test. In re George, 318 B.R. at 735, citing W. Sys., Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir. 1991); Restatement (Second) of Judgments § 24. In both actions, Debtor alleged the same course of conduct: that the In Rem Order was invalid due to the fake Lipkis Deed and the alleged false statements made by Wells Fargo in the stipulation; that the July 11, 2012 foreclosure sale was void because Wells Fargo had willfully violated the automatic stay by not first seeking stay relief in her case; and that Debtor was damaged as a result of Wells Fargo's alleged stay violation. In addition, the same evidence was presented in both actions and the two actions involved infringement of the same rights. Clearly, the instant motion and the First Adversary Proceeding[13] have an

_____

[13] The Second and Third Adversary Proceedings also have an identity of facts under the transactional test similar, if not
(continued...)

-18-

identity of claims.

**2.    Identity of parties**

It is undisputed that Debtor sued Wells Fargo in the First Adversary Proceeding and in her motion to set aside the sale of the Property.  Therefore, this criterion is met.

**3.    Final judgment on the merits**

Debtor contends that her voluntary dismissal of the Second Adversary Proceeding without prejudice, which was entered before Wells Fargo's motion to dismiss that action was heard or decided, was not a final judgment on the merits.  The bankruptcy court failed to identify which proceeding or order constituted the basis for applying claim preclusion.  Under Rule 7041, incorporating Civil Rule 41(a)(1)(B), the voluntary dismissal by Debtor of the Second Adversary Proceeding as to Wells Fargo was without prejudice and was not an adjudication on the merits.  Did the disposition of the First Adversary Proceeding have any effect on Debtor's motion to set aside the sale?

Wells Fargo moved to dismiss the First Adversary Proceeding under Civil Rule 12(b)(1), (4) and (6).  In that motion, Wells Fargo challenged Debtor's standing.  The bankruptcy court entered an order on November 1, 2012, granting Wells Fargo's motion under Civil Rule 12(b)(6) for failure to state a claim based on Debtor's lack of standing.  The court dismissed another defendant, Lipkis's counsel, on the same ground before that on October 24, 2012.  Both orders state that the First Adversary Proceeding was dismissed

---

[13](...continued)
nearly identical, to the First Adversary Proceeding and instant motion.

-19-

"without leave to amend." Debtor did not appeal these orders; the First Adversary Proceeding was closed shortly thereafter.

Although the bankruptcy court granted the motions to dismiss under Civil Rule 12(b)(6), it did so on the basis that Debtor lacked standing. Standing is a threshold question that must be resolved before proceeding to the merits of a case. L.A. Cty. Bar Ass'n v. Eu, 979 F.2d 697, 700 (9th Cir. 1992). See also Lujan v. Defs. of Wildlife, 504 U.S. 555, 570 n.5 (1992)(Article III standing like other bases of jurisdiction must be present at the inception of the lawsuit). Therefore, because standing is jurisdictional, lack of standing precludes a ruling on the merits. Media Techs. Licensing, LLC v. Upper Deck Co., 334 F.3d 1366, 1370 (Fed. Cir. 2003)(citing Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646, 653-54 (9th Cir. 2002)("[w]e must establish jurisdiction before proceeding to the merits of the case"); Bird v. Lewis & Clark Coll., 303 F.3d 1015, 1019 (9th Cir. 2002) (recognizing that before reaching merits of the case the court must determine the threshold issue of standing). Accord Stewart, 297 F.3d at 957.

Without question, "a judgment in favor of a defendant ordinarily bars the plaintiff from maintaining another action on the same claim." In re George, 318 B.R. at 735. But the bankruptcy court failed to consider the implications of dismissal for lack of standing, which is jurisdictional and precludes a ruling on the merits. See Restatement (Second) of Judgments § 19

-20-

& 20.[14]

## C.    Procedural Due Process

We do not reach the question of whether procedural due process was satisfied when, after Debtor had informed Wells Fargo's counsel that she challenged the validity of the Lipkis Deed, Wells Fargo apparently failed to notice Debtor of the stipulation for in rem relief from stay or its motion for approval of it.  Debtor was, after all, the borrower and the record title holder if her allegation was correct – clearly someone whose

---

[14] The General Rule of Bar is:

§ 19.  Judgment for Defendant—The General Rule of Bar
A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim.

RESTATEMENT (SECOND) OF JUDGMENTS § 19.

The exceptions to the General Rule of Bar are:

§ 20.  Judgment for Defendant—Exceptions to the General Rule of Bar
(1) A personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claim:
(a) When the judgment is one of dismissal for lack of jurisdiction, for improper venue, or for nonjoinder or misjoinder of parties; or
(b) When the plaintiff agrees to or elects a nonsuit (or voluntary dismissal) without prejudice or the court directs that the plaintiff be nonsuited (or that the action be otherwise dismissed) without prejudice; or
(c) When by statute or rule of court the judgment does not operate as a bar to another action on the same claim, or does not so operate unless the court specifies, and no such specification is made.
(2) A valid and final personal judgment for the defendant, which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied, unless a second action is precluded by operation of the substantive law.

RESTATEMENT (SECOND) OF JUDGMENTS § 20.

-21-

property interest would be affected if in rem relief were granted. See Ford v. Ford (In re Ford), 159 B.R. 590, 594 (Bankr. D. Or. 1993). Without dispute, Debtor has enjoyed due process in the subsequent motions and proceedings.

Given the procedural history and pending proceedings, we conclude that vacating and remanding the order denying the motion to set aside the sale of the Property allows the bankruptcy court to consider questions discussed herein in one comprehensive proceeding.[15]

## IV. CONCLUSION

For the foregoing reasons, we VACATE and REMAND for further proceedings consistent with this memorandum.[16]

Concurrence begins on next page.

---

[15] We disagree with Wells Fargo's contention that this appeal is "moot." Because Debtor was seeking stay violation damages under § 362(k), this appeal would never be moot. Further, it does not appear from the record that Wells Fargo has sold the Property to a third party. Even if it has, that fact would not absolve Wells Fargo from any potential stay violation damages.

[16] Debtor filed a request for judicial notice along with her opening brief on appeal. She asks the Panel to take judicial notice of three documents: (1) a copy of the complaint filed in the First Adversary Proceeding; (2) the order dismissing the First Adversary Proceeding; and (3) one of the three orders entered by Judge Tighe respecting the post-sale motions filed in Lipkis's bankruptcy case. Because we are able to take judicial notice of the existence, filing and content of documents filed in Debtor's underlying bankruptcy case and her related adversary proceedings, In re E.R. Fegert, Inc., 887 F.2d at 957–58, we **GRANT** Debtor's request for judicial notice of these documents.

Dunn, Bankruptcy Judge, concurring:

I join in the majority decision to vacate and remand the denial of the Debtor's motion to set aside the foreclosure sale of her home alleging violation of the automatic stay, based on the inadequacy of findings and conclusions to support the denial order. As set forth in detail in the majority Memorandum decision, the Panel could not tell from the record even what order or judgment(s) the bankruptcy court relied on in reaching its conclusion that claim preclusion applied, let alone whether the doctrine was applied appropriately. I write this concurrence to state a substantive question that may be even more appropriate to address on remand: Can a viable claim for violation of the automatic stay of § 362(a) be asserted in light of the existence of the unstayed In Rem Order when the foreclosure sale took place on July 11, 2012, and no motion to vacate the In Rem Order was filed in the Lipkis case until August 7, 2012 at the earliest, and the First Adversary Proceeding was not filed in Debtor's own bankruptcy case until later in that same month?