**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RETIRED EMPLOYEES ASSOCIATION
OF ORANGE COUNTY, INC.,
                 *Plaintiff-Appellant*,

v.

COUNTY OF ORANGE,
                 *Defendant-Appellee*.

No. 12-56706

D.C. No.
8:07-cv-01301-
AG-MLG

OPINION

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
November 4, 2013—Pasadena, California

Filed February 13, 2014

Before: M. Margaret McKeown, Ronald M. Gould,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge McKeown

# SUMMARY[*]

## Medical Benefits

The panel affirmed the district court's summary judgment in favor of Orange County in an action brought by the Retired Employees Association of Orange County alleging that its members had an implied vested right to the pooling of their health care premiums with those of current employees.

The panel held that the Association failed to raise a genuine issue of material fact regarding its alleged implied contract right to the pooled premium, leaving its implied contract claim without factual or legal support. The panel held that a practice or policy extended over a period of time does not translate into an implied contract right without clear legislative intent to create that right—an intent that the Association had not demonstrated in this case. The panel held that the nature of the Association's evidence underscored the absence of any definitive intent or commitment on the part of the County to provide for the pooled premium.

## COUNSEL

Michael P. Brown (argued), Law Office of Michael P. Brown, Seattle, Washington; Ernest Galvan, Rosen Bien Galvan & Grunfeld LLP, San Francisco, California, for Plaintiff-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Arthur A. Hartinger (argued) and Jennifer L. Nock, Meyers, Nave, Riback, Silver & Wilson, Oakland, California, for Defendant-Appellee.

## OPINION

McKEOWN, Circuit Judge:

For the second time, we consider what health benefits retired Orange County employees have under contract with the County of Orange ("County"). The Retired Employees Association of Orange County ("Retired Employees" or "REAOC"), which represents 4,600 retired employees and their spouses, sued the County, alleging that the Retired Employees have an implied vested right to the pooling of their health care premiums with those of current employees ("pooled premium"). Like the district court, we are sympathetic to the retirees' plight. As the California Court of Appeal reflected in an earlier case involving medical benefits for retirees, "[t]he spiraling cost of health care in America is simply unconscionable. The present high cost of medical insurance has unfortunately become a fact of life which in most instances results in disparate rates and medical coverage for those who can least afford it, including retirees." *Ventura Cnty. Retired Emps. Ass'n v. Cnty. of Ventura*, 228 Cal. App. 3d 1594, 1598 (1991). Nonetheless, we have no choice but to affirm the district court's grant of summary judgment in favor of the County because REAOC failed to raise a genuine issue of material fact regarding its alleged implied contract right to the pooled premium, leaving its implied contract claim without factual or legal support.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  HISTORY OF THE COUNTY'S POOLED BENEFITS

This suit arises from the County's decision to stop pooling retired and active employee health insurance premiums.  The County first began providing group medical insurance for its retired employees in 1966.  The County subsequently decided to cover retiree health insurance premium costs through a monthly grant.

Over a decade later, the County's Board of Retirement ("Retirement Board") voted, due to budgetary concerns, to stop providing monthly grants for prospective retirees but to continue the grants for employees retiring before June 28, 1979.  *Orange Cnty. Emps. Ass'n  v. Cnty. of Orange*, 234 Cal. App. 3d 833, 839 (1991).  This decision provoked the first round of benefits litigation, which took six years to wind its way through the California courts.  *Id.* at 837, 845.  The Orange County Employees Association ("OCEA") and other unions asked the County Board of Supervisors ("Board") to override the Retirement Board's decision on statutory grounds, but the Board refused.[1]  *Orange Cnty. Emps. Ass'n*, 234 Cal. App. 3d at 837–41.  The California Court of Appeal ruled that "the statutory scheme permits local agencies to consider the differences between retired and

---

[1]  The County requires the Board to approve organized employee and personnel compensation by resolution.  Orange County, Cal., Code of Ordinances tit. 1, div. 3, art. 1, § 1-3-2; *see also* Cal. Gov't Code § 25300 (2013).  The Board approves retiree compensation through collective bargaining agreements with labor representatives known as Memoranda of Understanding ("MOUs").  *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1129 (9th Cir. 2012).  Upon adoption by the Board, these MOUs become binding.

active employees in providing health benefits." *Id.* at 843. The court of appeal also upheld the County's decision, stating that the relevant statute "does not mandate equal treatment of active and retired employees." *Id.* at 841.

Apart from the dispute over responsibility for payment of premiums, another cost dispute began to brew over premium rates. From 1966 through 1984, on an annual basis, the County approved one premium rate for active employees and another rate for retired employees. Under this separate premium rate structure, the Board intended for each group's premiums to cover that group's claims and administrative costs.

Then, starting in 1985 and continuing through 2007, the County decided to pool health insurance premium rates for retired and active employees. The Board approved the pooled premium to "equaliz[e] active and retiree rates" and to resolve a $900,000 budget shortfall for retiree healthcare costs that resulted from a large number of retiree insurance claims mistakenly being reported as active employee claims. Pooling retiree premium rates with those of active employees immediately increased retiree rates by 72% on average, a less drastic measure than the alternative considered of increasing only retiree premium rates by 112% on average. Over time, however, the pooled premium substantially subsidized retiree premium rates. According to expert testimony, the pooled premium remained an important issue in negotiations between the Board and the unions. The Board approved these pooled health plan rates on a yearly basis.

The County continued to face mounting budgetary concerns, caused in part by high health insurance premium costs. In 2004, the County conducted a review of its retiree

health insurance program. After further negotiations between the County and various labor unions, the parties reached an agreement, effective January 1, 2008, to reform the County's health care program. In relevant part, the agreement split the insurance rate pool. This pool splitting meant that active employee health benefit premiums would be calculated separately from those of retired employees. Although REAOC did not directly participate in these negotiations, it did take part in related discussions with other labor unions and the County.

## II. CHALLENGES TO THE COUNTY'S TERMINATION OF THE POOLED PREMIUM

In response to the County's decision to terminate the pooled premium, REAOC filed suit in the Central District of California seeking declaratory and injunctive relief. Among other claims,[2] REAOC argued that the County's longstanding practice of pooling and the County's representations to employees regarding that practice created an implied contract right to continued pooled premiums for employees who retired prior to January 1, 2008. *Retired Emps. Ass'n of Orange Cnty. v. Cnty. of Orange* ("*REAOC I*"), 632 F. Supp. 2d 983, 986 (C.D. Cal. 2009). On cross-motions for summary judgment, the district court granted the County's motion for summary judgment on all claims. *Id.* at 988. The district court determined that "California courts have refused to find public entities contractually obligated to provide specified retirement benefits like those [REAOC] seeks in the absence of explicit legislative or statutory authority." *Id.* at

---

[2] REAOC's other claims included denial of due process in violation of the United States and California Constitutions, breach of contract, and age discrimination.

987. The court found that the County "has no contractual obligation to continue providing the pooling benefit" to retirees. *Id.* at 987.

REAOC appealed the judgment with respect to its contract clause claims. In response, we certified the following question to the California Supreme Court: "Whether, as a matter of California law, a California county and its employees can form an implied contract that confers vested rights to health benefits on retired county employees." *Retired Emps. Ass'n of Orange Cnty. v. Cnty. of Orange* ("*REAOC II*"), 610 F.3d 1099, 1101 (9th Cir. 2010). The California Supreme Court answered affirmatively, stating that vested health benefits "can be implied under certain circumstances from a county ordinance or resolution." *Retired Emps. Ass'n of Orange Cnty. v. Cnty. of Orange* ("*REAOC III*"), 266 P.3d 287, 301 (Cal. 2011).[3] The court declined, however, to determine whether such circumstances had been met with respect to REAOC and the County. *Id.* We remanded the case to the district court for further proceedings in light of *REAOC III*. *Retired Emps. Ass'n of Orange Cnty. v. Cnty. of Orange* ("*REAOC IV*"), 663 F.3d 1292, 1292 (9th Cir. 2011) (per curiam).

On remand, the district court again granted the County's motion for summary judgment. Addressing REAOC's implied contract theory, the district court held that "[u]nder

---

[3] We refer to the California Supreme Court decision as *REAOC III* because it was the third court in a sequence to consider the suit brought by REAOC. We note that the opinion in *Sonoma County Association of Retired Employees v. Sonoma County* ("*Sonoma Retired Employees*"), 708 F.3d 1109 (9th Cir. 2013), referred to the California case as *REAOC II*.

California Government Code Section 25300, any right to employee compensation must in some way be approved by the Board of Supervisors with a resolution or ordinance." The court concluded that REAOC "bears the burden of proving that the relevant statutes or ordinances reflect 'clear' legislative intent to enter into such a contract" and that it failed "to make this showing."

## ANALYSIS

We begin with the undisputed proposition that the County and its retired employees have an express contract that includes health benefit provisions. That contract is the product of negotiations resulting in binding MOUs (when adopted by County resolution) between the County and the Retired Employees. The Retired Employees acknowledge that none of the MOUs contain express provisions regarding pooling. Instead, the Retired Employees argue that the contract contains an *implied* right to the pooled premium. *See REAOC III*, 266 P.3d at 295 (noting that the Retired Employees stated that they have an express contract and are "seeking recognition only of an implied *term*" of that contract). The issue we consider on appeal is whether, under California law, such an implied term exists with respect to the pooled premium.

## I. FRAMEWORK FOR EVALUATING AN IMPLIED CONTRACT RIGHT

In *REAOC III*, the California Supreme Court provided guidance on assessing implied contract rights in the context of municipal employee benefits under California law. It held that "a vested right to health benefits for retired county employees can be implied . . . from a county ordinance or

resolution," when "the statutory language or circumstances accompanying its passage clearly . . . evince a legislative intent to create private rights of a contractual nature enforceable against the [governmental body]." *REAOC III*, 266 P.3d at 296, 301 (omission and alteration in original) (internal quotation marks omitted). The court cautioned that "implied rights to vested benefits should not be inferred without a clear basis in the contract or convincing extrinsic evidence." *Id.* at 299. The opinion provided no further explanation of the distinction, if any, between extrinsic evidence and accompanying circumstances. The court did emphasize, however, that any additional evidence must flow from a resolution or ordinance and "clearly evince" the parties' intent to create an implied contractual right. *Id.* at 289.

Following *REAOC III*, we had occasion to consider an implied contract term in another case involving retired municipal employees. In *Sonoma Retired Employees*, we determined that "where [a] County intended to create a contractual obligation by resolution or ordinance, such a contract may include implied terms that can be inferred from [e]vidence derived from experience and practice." 708 F.3d at 1116 n.4 (second alteration in original) (internal quotation marks omitted). We explained that if the retiree association "plausibly allege[d] that the County created a contract by means of a formally enacted resolution which ratified an MOU, for instance, then the Association may introduce evidence of that contract's implied terms, including testimony regarding the County's intent." *Id.*

Consideration of extrinsic evidence does not have a burden-shifting effect, despite the County's protestations and the district court's suggestion otherwise. "[I]t is presumed

that a statutory scheme is not intended to create private contractual or vested rights." *REAOC III*, 266 P.3d at 295 (internal quotation marks omitted). The Retired Employees—not the County—ultimately bear the "heavy burden" of overcoming the presumption against a legislative enactment creating a private contractual or vested right. *See id.* at 295, 298; *see also Walsh v. Bd. of Admin.*, 4 Cal. App. 4th 682, 697 (1992). To suspend legislative control in favor of an implied contract right, the evidence must be "unmistakable" so "that neither the governing body nor the public will be blindsided by unexpected obligations." *REAOC III*, 266 P.3d at 296–97 (internal quotation marks omitted). Here, REAOC must bear this "heavy burden" in its effort to raise a genuine issue of material fact that the County intended to create an implied, vested contract right. *See id.* at 295–98.

## II. REAOC'S CLAIM TO AN IMPLIED CONTRACT RIGHT TO THE POOLED PREMIUM

Viewing the evidence in the light most favorable to REAOC as the nonmoving party, we review de novo whether any genuine issue of material fact exists and whether the district court correctly applied the relevant substantive law. *See* Fed. R. Civ. P. 56(c); *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1050 (9th Cir. 1999) (en banc). In summary, REAOC's evidentiary support for the implied contract term rests on the following: (i) that its implied pooled premium was closely connected to the express contract provisions providing health plan benefits to retirees for life; (ii) that the pooled rate was "central to the bargained-for exchange between the parties," *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1148 (9th Cir. 2004); and (iii) that statements

made by County officials demonstrated that the implied right existed.

REAOC alleges that its implied contract right stems from the MOUs adopted annually by Board resolution. These resolutions followed the same pattern year by year: the Board approved, and thereby contractually committed to, the employee and retiree health plan rate for that particular year. Yet these MOUs and resolutions only support enrollment in County health plans at a specific rate for a given year, not a right to a lifetime pooled premium. For example, REAOC posits that the Board intended Resolution 84-1460, which created the pooled premium, to not only correct the administrative error that created the budget shortfall, but also to confer a lifetime benefit to retirees. To be sure, the Board-adopted MOU included the pooled premium, but REAOC concedes that the County did not expressly commit to its continuance. More precisely, that resolution authorized "the adoption of 1985 health rates," and says nothing about future premiums.

Beyond the initial pooling resolution, REAOC points to later MOUs adopted by the Board and official statements by the County that purportedly contemplated lifetime retiree health care benefits. For instance, as evidentiary support for its implied contract right claim, REAOC highlights an MOU stating that retirees may change their health care plans at their retirement date, a declaration from a County employee benefits director explaining that retirees are eligible for general health plans as a "lifetime benefit," and a 2007 Citizens' Report from the County's Auditor-Controller characterizing the pooled rate structure as part of the County's overall compensation package. Yet REAOC provides no evidence that credibly, let alone unmistakably,

supports its claim. To the contrary, resolutions such as Resolution 84-1460 refer only to a one-year contractual obligation. Similarly, a Board presentation to the unions stating that rate pooling will continue at that time does not demonstrate that the rate is anything more than a policy decision for that specific period. A practice or policy extended over a period of time does not translate into an implied contract right without clear legislative intent to create that right—an intent that REAOC has not demonstrated here. *REAOC III*, 266 P.3d 289, 296. The express terms of the MOUs and resolutions that REAOC highlights fail to raise a genuine issue of material fact because they do not show any link to REAOC's claim of an implied right to an ongoing pooled premium.

REAOC's assertions that its involvement in negotiations with the County reveal an implied contract right to the pooled premium also lack evidentiary support. REAOC states that when the Board passed the pooling resolution, the "Board and the Unions were in the midst of a years-long heated battle regarding the Unions' demand for greater retiree medical benefits." We acknowledge that these battles occurred, but no specific language or documentation from these negotiations suggests that REAOC entered into the claimed "bargained-for" agreement with the County.

The nature of REAOC's evidence underscores the absence of any definitive intent or commitment on the part of the County to provide for the pooled premium: a slide presented by the County's chief negotiator that merely includes the value of the pooled premium; a negotiation document prepared by the Board that expressly uses the "assumption" that the pooled premium would continue for the purposes of making retiree benefit projections; and another

presentation slide providing that "retiree rates will continue to be pooled for rate setting purposes" for that year. REAOC also cites to the declaration of a human resources assistant director who stated that the Board was unable to remove the benefit during collective bargaining because the MOU included the "Retiree Medical Program," a program encompassing the pooled premium. However, a supplemental statement clarified that the MOU did *not* contain the pooled rate structure. These limited fragments of evidence from County documents do not raise a genuine issue of material fact regarding any "bargained-for" exchange for the pooled premium. At best, this evidence simply corroborates that the unions and County continued to discuss the pooled premium; it does not raise a genuine issue of material fact regarding an implied term.

The other County statements raised by REAOC refer primarily to impressions of Board policies, not official County statements or documents. For instance, a County official's statement that the County categorized the pooled premium as an "Other Post Employment Benefit" does not mean that this accounting classification carried any contractual significance beyond the basic definition of that category being an exchange of salaries and benefits for employee services rendered. Finally, REAOC's argument about the general nature of retirement benefits as lifetime benefits is unavailing, because entitlement to those benefits does not reveal any agreement about REAOC's alleged implied contract right to the pooled premium.

REAOC faults the district court for its narrow treatment of extrinsic evidence. Although it did not have the benefit of *Sonoma Retired Employees* at the time of its decision, the district court nonetheless considered some of REAOC's

extrinsic evidence accompanying the passage of relevant resolutions and MOUs. For example, it briefly examined the circumstances surrounding the passage of Resolution 84-1460, when the pooled premium first began, stating in one line that the pooled premium "did not arise out of a bargained-for exchange with employees." The district court then cited to later legislation that it determined did not include language suggesting an ongoing County obligation to provide the pooled premium.

In a separate section on "extrinsic evidence," the district court stated that the "extrinsic course-of-conduct evidence that [REAOC] ask[ed] this Court to consider is necessarily irrelevant," because the resolutions were not ambiguous. Reasoning that its examination of extrinsic evidence would shift the burden of proof onto the County, the district court stated that it would not "cobble together evidence to manufacture a promise that the Board never made."

We do not cabin the role of extrinsic evidence as narrowly as the district court did. Indeed, the California Supreme Court recognized the role of "convincing extrinsic evidence," *REAOC III*, 266 P.3d at 299, and in *Sonoma Retired Employees*, we noted that implied terms may include "testimony regarding the County's intent," 708 F.3d at 1116 n.4.

Nonetheless, we do not need to address the precise contours for admitting and evaluating extrinsic evidence with respect to implied terms of a contract. Our review of the record reveals that REAOC's claim to an implied contractual right to the pooled premium falls short even if we consider its extrinsic evidence. Missing here is "statutory language or circumstances accompanying its passage clearly . . .

evinc[ing] a legislative intent to create [implied] private rights of a contractual nature enforceable against [the County]" regarding the pooled health insurance premium.**[4]** *REAOC III*, 266 P.3d at 296 (omission in original) (internal quotation marks omitted). We affirm the district court's order granting the County's motion for summary judgment.

**AFFIRMED.**

---

**[4]** REAOC also argues that its implied contractual right to the pooled premium had "vested." Because there is no implied term with respect to the pooled premium, we need not address the vesting claim. We also need not reach REAOC's request for reassignment to a different judge in the event of remand.